Good morning, Your Honors. Ina Lipkin on behalf of the petitioner. This is an immigration matter, arguing that the board's denial of asylum and related relief was erroneous and that the petitioner did in fact submit sufficient documentation as well as credible testimony to establish that his was a cause for him suffering persecution in India. He only supported that party due to his low case cast as a Hindu, and he credibly established that the opposing and powerful Akali Dal Kagan did not. Did you understand that there was or wasn't an adverse credibility finding by the immigration judge and the BIA? Was there or wasn't there? I believe the judge did find that he failed to provide credible detail, and the board affirmed that finding. So I do believe it was — I joined Judge Berzon, and I had to really look through the record. It's kind of an odd presentation. But I think at ER 58, didn't the IJ say he failed to meet his burden of proving he testified credibly? Right. Right. So there it is. So — and that's the way that we addressed the position of the judge in both the brief before the board and before this Court, and argued that any incredibility finding was erroneous, and then we gave examples why. But the biggest problem, it seemed to me, from the IJ, she talked about demeanor. This is post-Real ID Act, right? Right. Okay. So she talked about demeanor, and she talked about evasiveness. But it seemed to me the biggest problem she had was the implausibility of the overall story about these two warring factions. That's my word. But what about that? What about the implausibility? I think she gave him more time to get to corroborating information that was not forthcoming. It was not submitted in the lower court. That is true. However, we argued that the Petitioner's credible testimony and his supporting documents such as the letter from the — Wait a minute. But in order to say he had credible testimony, you have to tell me why she was — she wrongly found him incredible. So we're back to the same circle. Part of the reason why she found him that he hadn't, with a strange phraseology, hadn't sufficiently proved himself credible was because there was no background support for the basic story. So we're back to the same place again. But we argue that she should have looked at his testimony and the supporting documents that he did present, such as contained in Exhibit 5, the letter from his political party, the affidavits. Nothing in his testimony showed that they should not have been given full weight. He laid a foundation for them. The government wasn't able to show that anything about those particular documents were not credible, and, therefore, the judge erred by failing to give full weight to that supporting documentation, even with the — Speaking of supporting documents, though, one aspect in which the I.J. criticized the Petitioner, right, was that he didn't provide corroboration, apparently available corroboration, for some important factors, right? She was looking for some sort of written proof in a background document that the Akali Dalbadl party attacks members of the BSP party, which the Petitioner would have been. And that would be something that would be readily available if it happened, wouldn't it? Only if it was reported on, Your Honor. So apparently it wasn't reported on as Petitioner wasn't able to produce that. Well, did he say that? He, you know, he did a Google search or something like that, and whatever they do in that part of India, and then there was no corroborating or adverse documentation either way? I believe his attorney, before the immigration judge, asked for a continuance to find that documentation and was not able to produce it and submit it. I don't think there was testimony with an explanation as to why not. Counsel, you just referred to a letter from the party. Yes. Was that submitted — first of all, can you give me the ER site for that? Because I want to make sure we're talking about the same document. It's Exhibit 5, and it's the letter from the BSP party. Let me tell you what page it's on. My next question, when you find it, is was that submitted before or after the continuance? I will tell you momentarily. While I'm looking for it, I want to point the Court's attention to the background documentation that was submitted, such as in Exhibit 6, where several human rights reports show that the police engage in partisan policing and will attack members of oppositional political parties at the behest of whichever party is in power. That is on page 334 of the CAR. And now I'm approaching the BSP letter. The IJ and the board, the immigration judge and the board, completely disregarded Petitioner's credible testimony that he was also falsely arrested for the day by the Punjabi police and told — or threatened by them to leave his party as well. No one had considered that and failed to acknowledge it in rendering a decision at the level of the IJ and the board. So the letter — there are letters that were submitted after the I-589 was submitted. Exhibit 5 was submitted April 22, 2013. And those were sworn affidavits attesting to the Petitioner's involvement in the BSP party. So are we talking about, like, I have an affidavit at 381? Is that what you mean? Yes. And 382? Yes. Now, the affidavit at 381 was written by a person who says that he was actually the district general secretary of the party. Right. Is that — and I'm just trying to get you to — if you could help me out. For the negative credibility determination, my understanding is that the IJ was most impressed that the overall story about these two parties was — about the friction between them was implausible, was the word she used. So I'm trying to figure out a continuance to get corroborating evidence of that fact. And so what do you want us to look at? Is it these affidavits? I do want you to look at these affidavits because they're — Okay. Can I just — affidavits and what else? I want to make sure we're not missing anything. And the general background documentation about conditions in India in Exhibit 6 that relate to police impunity, as the Petitioner had also described, persecution at the hands of the police. Okay. He did corroborate — the documents submitted did corroborate to the degree that this party existed and did deal with promoting poor people and lower-class people, right? I mean, that much was corroborated by the — It appears so, yes. By the documents later submitted. Yes. But not the question of whether this group was being persecuted or attacked. But as we argue in our brief, this Court has found on numerous occasions in relation to omissions in a Department of State report that the government usually is the one to submit, that not every incident is always mentioned in such a report, and the certain incidents cannot definitively be a basis to make an incredibility finding or find that an event did not occur just because it's not discussed in a Department of State report, and that was in our brief. And similarly, the Court should use the same sort of reasoning here in this case that the Petitioner wasn't able to find documented articles about the conflict between two parties, but that might also be because it wasn't reported on. It doesn't mean it didn't exist. I'll save the remaining minutes. Thank you. Good morning, Your Honors. My name is Ashley Martin, and I represent the Respondent in this matter. Your Honors, Section 1158b1b is clear that an asylum applicant can meet his burden in one of two ways. Number one, he can provide credible, persuasive testimony that refers to specific facts demonstrating refugee status, or the applicant can provide credible testimony in combination with corroborative evidence. Here, the Petitioner provided neither, and for that reason, the Court should deny the Petition. The agency referred to a number of problems with the Petitioner's testimony in this case. There's the most the largest problem, which was implausibility, that you would have someone who is admittedly a low-level member of the Bahujan Samaj Party or the BSP repeatedly being targeted for attacks by the Akali Dal Badal. Another problem with the Petitioner was that he was a low-level member of the party if the parties were in conflict.  if the parties were in conflict. Well, that would require that the parties be in conflict. To such an extent that low-level members of the party are going to be in conflict. Kagan. But there's a different point, is all. And one point is it's implausible that he would be attacked because he's a low-level member of the party. That's sort of one issue. But the second issue seems to me to be more fundamental. Is it your position that she found that it was implausible that the two parties were in conflict, or just that he would have been a subject of an attack because of he was a low-level member of the party? The immigration judge found an implausibility that he would be repeatedly attacked as a low-level member of the party. The immigration judge did not find an implausibility that these two parties might be in conflict. But when you look at the testimony, the Petitioner attempted to prove that. But he did ask for proof of that. I mean, he seemed to be saying it's implausible, as I understood it, it's implausible that they would be in conflict and nobody would notice. I mean, it wouldn't be you wouldn't there wouldn't be any public recognition  Right. I mean, that's a very fundamental problem with this claim. The Petitioner testified regarding the July 2009 rally that they expected somewhere around 5,000 or 6,000 BSP members to attend, and that only about 1,500 showed up because there was this sort of widespread fear of the Akali Dal Badal party. The Petitioner also testified on page 126 that members of the BSP were often followed and attacked by members of the Akali Dal Badal. Well, if that's the case, why is there nothing to show that these attacks were happening on at least a semi-widespread basis? Right. And my only point is that is that's distinguishable from this other point, which had to do with his rank within the party. But if both parties writ large were at each other's throats, it seems to me that there would be that seems to be a basis to find the allegation implausible because it's often corroborated. Yes. Yeah. Your Honor, I do agree with that. I think the immigration judge was also saying that, you know, maybe this would be a little bit different if this were somebody who was a party leader, who was — Maybe. I'm not sure. Could we move on to another point? Because now I think I've taken you on a detour that doesn't matter very much. But what about what was corroborated? I mean, there's this letter from the hospital, and it looks pretty — quite specific and is on the right date. There's no explanation for why he would have suffered these injuries other than his story. Correct. What did the I.J. say about that? Well, the immigration judge didn't really — didn't comment too much on the hospital record specifically. As you noted, when you look at that record, there's mention of injuries. There's no mention of why or how those injuries — But there were considerable injuries over his body in the form of bruises and swellings on the back of his abdomen, legs, and arms. Correct. Only consistent with being beaten, which is what he reported. Absolutely. It is — Why isn't that corroboration? That's Judge Berzon's point. It's not corroboration because it says nothing as to why or how those injuries occurred. It says nothing as to the fundamental implausibility in the claim that there were BSP members and Akali Dalbadal members at each other's throats. And when you look at the other corroborative documents provided, namely the three affidavits, the immigration judge noted that there was problems with the indicia of reliability with those documents. She also mentioned his overall demeanor, which, you know, she was in a position to observe and we are not. Correct. And evasiveness. And the transcript helps us a little better assess the problem with evasiveness. Was translation, was communication an issue or barrier? There's certainly no argument by the Petitioner in this case that there was a problem with communication between the translator and the applicant. But there clearly was, when you read the transcript, because it was apparently changing languages. Yes. Occasionally, he would slip into speaking in Hindi or English, and the immigration judge reminded the applicant to please continue to testify in Punjabi so that the translator could understand him. But there's no argument here that there was such a lack of communication between the translator and the applicant that he was unable to provide a clear picture of his persecution claim or adequately respond to questions. And the immigration judge's adverse credibility finding is supported by the record. There was a demeanor finding that there were certain points where the applicant was challenged with questions about his testimony and was unresponsive. In particular — What about this whole — I mean, the only other thing that the I.G.A. specifically relied on is this whole incident about how did they see your button, if they were in front of you or behind you or whatever. But you don't seem to be defending on that ground. Your Honor, the government does defend that as certainly an example of shifting testimony. The applicant initially testified that the specific men who attacked him in July of 2009 recognized him as a member of the BSP based on a button that he was wearing on his chest in the front. Yet he testified, they were following me from behind, then they pulled ahead of me, stopped me on the road, and attacked me. Well, that naturally raised the question, how did they recognize you as a member of the BSP? But didn't that — that was the part that, for me, seemed to be one of the weaker links, frankly, because I think the testimony was that he had been at a rally and he was leaving the rally, right? Not that they just came upon him on the road and they were behind him on the road, where they clearly wouldn't have been able to see the political button. Well, it was unclear, I think. The Petitioner was provided with an opportunity, particularly on pages 124 and 125 of the record, to clarify his testimony in this regard. He was asked, okay, are you testifying that these men recognized you from earlier in the day? Is it that they saw you at the rally? And it was at that point that the Petitioner provided a couple of unresponsive statements. In response to that question, saying, well, I was bringing water into the rally from water tankers outside. Well, that didn't really answer the question. And, moreover, there's no way that he could have known for sure if these specific men knew him from the rally, because on pages 108 and 109 of the record, he said, their faces were covered when they attacked me. So I couldn't exactly make out who they were. So he may have believed that perhaps these men recognized him from earlier in the day. He couldn't have known for sure. But if he believed that these men probably recognized him from earlier in the day at the rally, he could have simply said that. Instead, when he was initially asked about the button and how could they have seen it if they were following you from behind, he said, well, actually, they rode up ahead of me, they went to a gas station, they turned around and came back, and that's when they saw it. Well, that was really quite different from what he testified to originally. Originally, he said, they came up from behind me, they pulled ahead of me, and they stopped me. Not that they pulled ahead of me, went to a gas station, came back, saw my button, made a U-turn, and then came up from behind me to stop me and attack me. Kagan. But as for demeanor, the IJ says that the demeanor seems sincere. So where's the negative demeanor determination? Right. I think that the negative demeanor determination really came in with the unresponsive answers whenever this applicant was pressed about some holes in his testimony. But, Your Honors, that demeanor finding in combination with the overall implausibility of this claim --" Where is that demeanor finding? In the immigration judge's decision. Where? Where? I believe, let's see. When he refers to unresponsiveness, Your Honor, I apologize. I don't know off the top of my head. Okay. Thank you. I can provide that in a 28J letter if the Court prefers. But, Your Honors, even if the Court disagrees with the adverse credibility finding in this case, this is a situation where corroboration was required to provide greater reliability. This was weak testimony that was certainly in need of corroboration. The applicant received notice and an opportunity to provide that and failed to do so. What about Ms. Lipkin's explanation that since, if it happened, since it was, you know, an attack on minor, low-level party members, as you describe them, it's not newsworthy, so there wouldn't be any news accounts of it? In other words, there's no corroborating material available. Correct. And if the Petitioner was accurate in testifying that the enmity between the BSP and the ADB was so severe that low-level members of the party were being attacked frequently after rallies, then surely that documentation in the form of a newspaper or article at least would have been available. And if it were unavailable, then this applicant had the opportunity to explain that. I mean, there was a continuance of over two months. He appeared at a reconvened hearing. At that time, he could have explained, I searched, I took these measures to find the corroboration that the immigration judge requested. But the applicant didn't do that. He didn't provide any kind of explanation as to why the requested corroboration would not have been available. And, Your Honors, I see that my time has expired. Thank you very much. Okay. Your Honors, I had the opportunity to look, and the IJ's finding of nonresponsiveness is page 55 of the record. 5-5? 5-5. It seems that part of her finding rests on speculation and conjecture, just because the petitioner couldn't give more detail about what the police told his family members after he'd already departed India. That seemed to have been a basis for her negative finding. But, in fact, as explained in the briefs, he didn't know what the police said as his family hadn't relayed that kind of detail to him. And, therefore, that was an improper basis to find him nonresponsive. As far as the medical documentation, the IJ at 57 blamed the petitioner for failing to provide more detail in his written original statement. But he was allowed to flesh out the details of the injuries he sustained and the treatment he got during the course of testimony, which he did. And he corroborated it with the medical document in Exhibit 5. Thank you so much. Thank you very much. The case of Powell v. Sessions is submitted, and we will go on to the next case, which is Marsh Aviation Company v. Hardy Aviation Insurance.
judges: Tashima, Berzon, Christen